RACHEL EVANS KING
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
(202) 514-5471

JOHN D. HOGGAN
Assistant United States Attorney
U.S. Department of Justice
Northern District of New York
Bar Roll No. 511254
Rm. 218 445 Broadway
Albany, NY 12207

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    *Plaintiff*,<br><br>    v.<br><br>UPSTATE SHREDDING, LLC, and<br>WEITSMAN SHREDDING, LLC<br><br>    *Defendants*. | Civil Action No. __ |

## **COMPLAINT**

1

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), file this complaint against Upstate Shredding, LLC ("Upstate") and Weitsman Shredding, LCC ("Weitsman") and allege as follows:

<u>NATURE OF THE ACTION</u>

1.      Weitsman operates and Upstate owns a 400 ton-per-hour capacity scrap metal shredder in Owego, New York (the "Facility").  This shredder reduces automobiles and other scrap metal materials into small pieces and generates enough heat to melt or burn the plastics, paints, and oils in the scrap material.  The shredding process produces significant emissions of volatile organic compounds ("VOCs").

2.      Upstate and Weitsman have failed to install Reasonably Available Control Technology ("RACT") for VOCs.  Upstate and Weitsman are required to control 81 percent of VOC emissions from their facility under the Clean Air Act ("CAA" or "the Act") and the New York State Implementation Plan ("NY SIP").  They control none of their VOC emissions.

3.      VOCs are primary precursors to the formation of ground-level ozone and particulate matter, which are the main ingredients of smog.  Breathing VOCs

2

can not only irritate the respiratory tract and cause nausea but also damage the central nervous system and other organs.  VOCs also contribute to greenhouse gas effects and climate change.

4.      This is a civil action brought against Upstate and Weitsman (collectively, the "Defendants"), pursuant to Sections 113(a) and (b) of the Act, 42 U.S.C. §§ 7413(a)-(b), that seeks injunctive relief and civil penalties.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action and the parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b).

6.      Venue lies in this District pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because the Facility is located in this District and because the alleged violations occurred in this District.

## NOTICE

7.      The United States notified Upstate and Weitsman, as well as the State of New York, of the violations alleged herein on September 23, 2021, which is more than 30 days prior to filing this action, as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

<u>DEFENDANTS</u>

8.      Upstate is a New York limited liability company.

9.      Upstate is a "person" within the meaning of Section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e).

10.      At all times relevant to this action, Upstate was and continues to be the "owner" of the Facility, within the meaning of Section 113(b) of the Act, 42 U.S.C. § 7413(b).

11.      Weitsman is a New York limited liability company.

12.      Weitsman is a "person" within the meaning of Section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e).

13.      At all times relevant to this action, Weitsman was and continues to be the "operator" of the Facility, within the meaning of Section 113(b) of the Act, 42 U.S.C. § 7413(b).

<u>NEW YORK STATE IMPLEMENTATION PLAN</u>

14.      Section 108(a) of the Clean Air Act requires EPA to identify and prepare air quality criteria for each air pollutant as defined in the Act.  42 U.S.C. § 7408(a).

15.      For each air pollutant as defined in the Clean Air Act, EPA must promulgate national ambient air quality standards ("NAAQS") to protect the public

health and welfare.  Section 109 of the Act, 42 U.S.C. § 7409.

16.     Under Sections 108 and 109 of the Clean Air Act, 42 U.S.C. §§ 7408 and 7409, EPA has identified and promulgated NAAQS for ozone.  40 C.F.R. §§ 50.9–50.10.

17.     Ozone, a main ingredient in urban smog, forms when VOCs react with oxides of nitrogen in the presence of sunlight.

18.     The Clean Air Act defines "air pollutant" to include "any precursors to the formation of any air pollutant, to the extent the Administrator has identified such precursor or precursors for the particular purpose for which the team 'air pollutant' is used."  42 U.S.C. § 7602(g).

19.     VOCs and oxides of nitrogen are the regulated precursor pollutants with respect to attaining and maintaining the NAAQS for ozone.  *See, e.g.*, 42 U.S.C. § 7511a.

20.     Each state must prepare a state implementation plan incorporating regulations designed to implement and enforce NAAQS for ozone and other pollutants in each region within the state to attain and maintain healthy air quality. 42 U.S.C. § 7410(a).

21.     Owego, New York, where the Facility is located, is within an "ozone transport region" that includes the entire state of New York.  *See* 42 U.S.C.

§ 7511c(a).

22.     Because New York is part of a designated ozone transport region, it must regulate precursor emissions for ozone, including VOCs, as though the state was in nonattainment for ozone.  *See* 42 U.S.C. § 7511c(b).

23.     Under the Clean Air Act, state implementation plans in nonattainment areas must "provide for the implementation of reasonably available control measures . . . including such reductions in emissions from existing sources in the area as may be obtained through the adoption, at a minimum, of reasonably available control technology ("RACT")."  42 U.S.C. § 7502(c)(1).

24.     Federal regulations define RACT as "devices, systems, process modifications, or other apparatus or techniques that are reasonably available taking into account: (1) The necessity of imposing such controls in order to attain and maintain a national ambient air quality standard; (2) The social, environmental, and economic impact of such controls; . . . ." 40 C.F.R. § 51.100(o).

25.     New York clarified the RACT and permit requirements in the NY SIP to indicate that shredders are not "solid waste handling" trivial activity under 6 N.Y.C.R.R. 201-3.3(c)(41), which exempts certain trivial activities from obtaining permits or complying with permit requirements. These changes were adopted on January 20, 2021 and a Notice of Adoption was published in the New York State

Register on February 10, 2021.  *See* Proposed Rule XLII N.Y. Reg. 11–15 (Apr.

29, 2020); Letter from J. Jared Snyder, Deputy Commissioner Office of Air,

Climate, and Energy, New York State Department of Environmental Conservation

to Walter Mugdan, Acting Regional Administrator, U.S. Environmental Protection

Agency Region 2 (March 23, 2021), *available at*

https://www.dec.ny.gov/docs/air_pdf/sip201revision.pdf.

26.     Prior to the regulatory change referenced in the previous paragraph,

the NY SIP did not explicitly state that metal shredders were "solid waste

handling" trivial activity under 6 N.Y.C.R.R. § 201-3.3(c)(41).  *See* XLII N.Y.

Reg. 12 (Apr. 29, 2020).

27.     EPA approved the revised RACT requirements and definitions

applicable to shredders in the NY SIP in 2021.  *See* 86 Fed. Reg. 54375–77 (Oct. 1,

2021).

28.     The NY SIP defines RACT as the "[l]owest emission limit that a

particular source is capable of meeting by application of control technology that is

reasonably available, considering technological and economic feasibility."

6 N.Y.C.R.R. § 200.1(bq).

29.     The NY SIP requires that "owners and operators of facilities located

outside of Lower Orange County towns of Blooming Grove, Chester, Highlands,

Monroe, Tuxedo, Warwick, and Woodbury and the New York City metropolitan area" must demonstrate and implement RACT if they have an annual potential to emit 50 tons or more of VOCs ("Major Source").  6 N.Y.C.R.R. § 212-3.1(a)(2).

30.     Among other exemptions, RACT control technology is not required for a Major Source if: (1) the source's potential VOC emissions are less than 3.0 pounds per hour, and its actual emissions in absence of the control equipment are less than 15.0 pounds per day; or (2) the source's owners and/or operators provide a plan to limit the source's annual potential to emit VOCs below 50 tons per year. 6 N.Y.C.R.R. §§ 212-3.1(b), (c), (d).

31.     If no exemption applies, the Major Source must install RACT technology for VOCs: a capture system and a control device with an overall removal efficiency of at least 81 percent.  6 N.Y.C.R.R. § 212-3.1(c)(4)(i).

32.     The federal government may enforce an EPA-approved state implementation plan's requirements and prohibitions.  *See* U.S.C. §§ 7413(a)-(b).

## TITLE V

33.     Title V of the Clean Air Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for, inter alia, "major sources."

34.     The Title V permit consolidates in one document the federal and state air regulations and conditions that apply to a source's operation.  *See* 42 U.S.C.

§§ 7661(4), 7661c.

35.      Under Section 501(2) of the Clean Air Act, 42 U.S.C. § 7661(2), the term "major source" includes a "major stationary source," as defined in Section 302(j) of the Act, 42 U.S.C. § 7602(j).

36.      Under Section 503(c) of the Clean Air Act, 42 U.S.C. § 7661b(c), and 40 C.F.R § 70.5, major sources are required to apply for a Title V operating permit no later than 12 months after becoming subject to a federally approved state Title V operating permit program, or such earlier date established by the state.

37.      Section 502(b) of the CAA, 42 U.S.C. § 7661a(a), makes unlawful the operation of any source subject to Title V, except operation in compliance with a permit issued by a permitting authority pursuant to Title V.

38.      EPA fully approved New York's Title V operating permit program on January 31, 2002.  *See* 67 Fed. Reg. 5216 (Feb. 5, 2002).  EPA also approved revisions to definitional provisions applicable to the New York's Title V operating permit program on December 27, 2016.  *See* 81 Fed. Reg. 95047 (Dec. 27, 2016).

39.      New York's EPA-approved Title V operating permit program is codified at 6 N.Y.C.R.R. § 201-6.

40.      New York's Title V operating permit program requires that "no person shall construct or operate" a "major facility" "without first obtaining a title

V permit." 6 N.Y.C.R.R. § 201-6.1(a).

41.     New York's Title V regulations define "a major stationary source or major source or major facility" as, among other things, any stationary source, source, or facility, that is in an attainment area of the state within the ozone transport region with a potential to emit that equal or exceeds 50 tons per year of VOCs. 6 N.Y.C.R.R. §§ 201-2.1(b)(21)(iv)(c).

<u>GENERAL ALLEGATIONS</u>

42.     Since at least February 2021, Weitsman has operated and Upstate has owned a 400-ton-per-hour capacity shredder at the Facility.

43.     Weitsman and Upstate's shredder at the Facility shreds metal goods, such as automobiles and household appliances, to recover reusable metal.

44.     Weitsman and Upstate's shredder at the Facility releases VOCs when shredding metal goods.

45.     The Facility is in Tioga County, New York.

46.     Tioga County, New York is located outside of the Lower Orange County towns of Blooming Grove, Chester, Highlands, Monroe, Tuxedo, Warwick, and Woodbury and the New York City metropolitan area.

47.     The NYSDEC issued the Facility an air facility registration certificate (Registration ID: 7-4930-00117/00004) (the "Certificate") pursuant to 6

N.Y.C.R.R. § 201-4 in April 2011.

48.     The Certificate authorized the replacement of the existing shredder at the Facility with a 500 ton-per-hour capacity shredder.

49.     The Certificate also identified the shredder as the "primary emission source" at the Facility and stated that the shredder could not operate without the operation of a water spray injection system.

50.     The Certificate did not note any control technology for VOC emissions on the shredder at the Facility.

51.     EPA requested information about the Facility from Upstate in a letter dated June 9, 2020.

52.     Plumley Engineering, on behalf of Upstate, replied to the June 2020 letter on August 24, 2020, providing information about the Facility, its air emission control equipment and processes, its monthly intake of motor vehicles in 2018 and 2019, and the monthly tonnage of scrap processed by the Facility in 2018 and 2019.

53.     Plumley Engineering, on behalf of Upstate, reported to EPA the facility's monthly hours of operations.

54.     Plumley Engineering, on behalf of Upstate, reported that the only air emission control equipment or process controls owned and/or in operation at the

Facility for the shredder is a Smart Water System for dust emissions.

55.     Plumley Engineering, on behalf of Upstate, reported that Upstate had not completed any air emission calculations in 2018 or 2019.

56.     The Facility has not conducted any testing of VOC emissions to the atmosphere from the Facility's shredder, nor has the Facility submitted any test notices and/or protocols to the NYSDEC for VOC emissions testing of the Facility's shredder.

57.     EPA observers have been present at VOC emission tests within the last three years for several comparable metal shredding facilities around the United States ("Representative Facilities").

58.     Like Upstate, the Representative Facilities shred automobiles and metal appliances, among other metal goods.

59.     Like Upstate, the Representative Facilities operate hammermill metal shredders that process a wide range of scrap metals.

60.     Based on the Facility's total capacity, the Facility's physical and operation limitations, and the VOC emission rates at the Representative Facilities, EPA has identified through reasonable calculations a likely range of VOC emissions per ton of metal shredded at the Upstate Facility.

61.     The Defendants do not have federally enforceable permit conditions

limiting VOC emissions at the Facility below 50 tons per year, pursuant to 6

N.Y.C.R.R. § 212-3.1(d).

62.     The Defendants do not maintain, nor have they applied for, a Title V

operating permit pursuant to the NY SIP and Title V of the Act.

63.     On September 23, 2021, EPA Region 2 issued the Defendants a

Notice of Violation that identified, among other things, the Facility's violations of

Section 212-3 of the NY SIP and Title V of the Act.

FIRST CLAIM FOR RELIEF
(New York State Implementation Plan: RACT Requirements)

64.     The preceding Paragraphs are realleged and incorporated herein by

reference.

65.     "Owner" is defined in the NY SIP as "any person who has legal or

equitable title to an emission source, or of the control equipment at such source." 6

N.Y.C.R.R. § 200.1(bc).

66.     Upstate is an "owner" within the meaning of 6 N.Y.C.R.R.

§ 200.1(bc).

67.     "Operator" is defined in the NY SIP as "any person who leases,

operates, controls or supervises a facility at which air contaminants are emitted." 6

N.Y.C.R.R. § 200.1(ba).

68.     Weitsman is an "operator" within the meaning of 6 N.Y.C.R.R.

§ 200.1(ba).

69.     Based on the information provided by the Defendants to EPA and the results of VOC emissions testing conducted at the Representative Facilities, EPA estimated that the Facility's metal shredder has the potential to emit more than 50 tons per year of VOCs.

70.     Based on the information provided by the Defendants to EPA and the results of VOC emissions testing conducted at the Representative Facilities, EPA calculated that the Facility's shredder (1) has a VOC emission rate that exceeds 3.0 pounds per hour and (2) actually emits more than 15 pounds of VOCs per day.

71.     The NY SIP RACT requirements therefore apply to the shredder at the Facility because (1) the Facility is located in Tioga County, outside of certain Lower Orange County towns and the New York metropolitan area; (2) the shredder has the annual potential to emit 50 tons of more of VOCs; (3) the shredder's emissions exceed 3.0 pounds of VOCs per hour; (4) the shredder's actual emissions in the absence of control equipment exceed 15 pounds of VOCs per day, (5) the shredder does not have federally enforceable permit conditions limiting its emissions to below 50 tons of VOCs per year; and no other exemption applies.  *See* 6 N.Y.C.R.R. §§ 212-3.1(a)(2), (c)(1), (d).

72.     Upstate and Weitsman has not installed any enclosure to capture VOC

emissions or implemented any VOC emission controls on the shredder at the Facility.

73.     Upstate and Weitsman have neither conducted any testing of VOC emissions from the Facility's metal shredder, nor submitted any test notices and/or protocols to the NYSDEC for VOC emissions testing of the Facility's metal shredder.

74.     Since at least February 2021, Upstate and Weitsman are and have been in violation of the NY SIP RACT requirements at 6 N.Y.C.R.R. § 212-3.1 for emitting VOCs in excess of the maximum allowable emission rate for emission points equipped with RACT.

75.     Unless Upstate and Weitsman are otherwise ordered by this Court, the allegations alleged in this Claim for Relief will likely continue.

76.     Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), authorizes EPA to bring a civil action under Section 113(b) against any person that is in violation of any requirement or prohibition of an applicable state implementation plan at any time after the expiration of 30 days following the date on which EPA issued a notice of violation to such person and the state.

77.     More than 30 days have elapsed since EPA issued a notice of violation to Upstate and Weitsman and to New York State for the violation of the

NY SIP alleged in this claim.

78.    Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes EPA to commence a civil action against any person who violates, inter alia, any requirement or prohibition of an applicable SIP, and to obtain appropriate relief, which includes injunctive relief and civil penalties of up to $25,000 per day for each violation.  This statutory maximum civil penalty has been increased to reflect inflation by the Federal Civil Penalties Inflation Adjustment Act, 28 U.S.C. § 2461, as amended, to $37,500 per day for each violation occurring after January 12, 2009, through November 2, 2015, and up to $117,468 per day per violation for each violation occurring after November 2, 2015.  *See* 40 C.F.R. § 19.4, tbls. 1 & 2.

79.    For their violations of the NY SIP, Upstate and Weitsman are subject to injunctive relief and civil penalties of $37,500 per day for each violation occurring after January 12, 2009, through November 2, 2015, and up to $117,468 per day per violation for each violation occurring after November 2, 2015.

<u>SECOND CLAIM FOR RELIEF</u>
(Title V)

80.    The preceding Paragraphs are realleged and incorporated herein by reference.

81.    New York's Title V operating permit program requires that "no

16

person shall construct or operate" a "major facility" "without first obtaining a title V permit."  6 N.Y.C.R.R. § 201-6.1(a).

82.      "Person" is defined in the NY SIP as any individual, public or private corporation, political subdivision, government agency, department or bureau of the State, municipality, industry, copartnership, association, firm, trust, estate, or "any other legal entity whatsoever."  6 N.Y.C.R.R. § 200.1(bi).

83.      Upstate is a "person" within the meaning of 6 N.Y.C.R.R. § 200.1(bi).

84.      Weitsman is a "person" within the meaning of 6 N.Y.C.R.R. § 200.1(bi).

85.      New York's Title V operating permit program, as approved by EPA, applies to facilities that are located within an ozone transport region and that emit or have the potential to emit at least 50 tons per year of VOCs.  *See* 6 N.Y.C.R.R. §§ 201-2.1(b)(21)(iv)(c) , 201-6.1(a)(1).

86.      The calculation of a facility's potential to emit excludes "fugitive emissions," defined as "[e]missions of air contaminants which could not reasonably pas through a stack, vent, chimney, or other functionally equivalent opening."  6 N.Y.C.R.R. §§ 200.1(af), 201-2.1(b)(21)(iv).

87.      "Stack" includes any "conduit, chimney, duct, vent, flue or opening of any kind arranged to conduct air contaminants to the outdoor atmosphere."

6 N.Y.C.R.R. § 200.1(bz).

88.    Although the Facility's shredder VOC emissions are currently released directly to the outdoor atmosphere, they are not "fugitive emissions" within the meaning of 6 N.Y.C.R.R. § 201-2.1(b)(21)(iv) because they could reasonably pass through a stack or chimney.

89.    "Potential to emit" means the "maximum capacity of an air contamination source to emit any regulated air pollutant under its physical and operational design. Any physical or operational limitation on the capacity of the emission source to emit a regulated air pollutant, including air pollution control equipment and/or restrictions on the hours of operation, or on the type or amount of material combusted, stored, or processed, shall be treated as a part of the design if the limitation is enforceable by the department and the administrator." 6 N.Y.C.R.R. § 200.1(bl).

90.    EPA estimated that the Facility's metal shredder has the potential to emit more than 50 tons per year of VOCs based on (1) the information provided by the Defendants to EPA, including the total capacity of the Facility's metal shredder to process scrap metal; (2) all the enforceable physical and operational limitations on production and hours of operation; and (3) the results of VOC emissions testing conducted at the Representative Facilities.

91.     Because the Facility has the potential to emit more than 50 tons of VOCs per year, it was required to apply for an operating permit prior to operating the source.  *See* 6 N.Y.C.R.R. § 201-6.1(a).

92.     The Facility began operating in December 2010, so it was required to apply for a Title V operating permit by December 2010.

93.     Section 502(a) of the Clean Air Act, 42 U.S.C. § 7661a(a), and 40 C.F.R. § 70.7(b) prohibit a major source from operating except in accordance with a Title V operating permit after the effective date of any permit program approved or promulgated under Title V of the Act.

94.     Since December 2010, Weitsman and Upstate have operated the Facility without a Title V operating permit, in violation of Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and 40 C.F.R. § 70.7(b).

95.     Unless Upstate and Weitsman are otherwise ordered by the Court, the violations alleged in this Claim for Relief will likely continue.

96.     Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3), authorizes EPA to bring a civil action under Section 113(b) of the Act against any person that is in violation of any requirement or prohibition under the Title V provisions of the Act, including any rule approved under the Title V provisions.

97.     For their failure to apply for a Title V operating permit, and their

operation of the Facility without a Title V permit, Upstate and Weitsman are subject to injunctive relief and civil penalties of up to $37,500 per day for each violation occurring after January 12, 2009, through November 2, 2015, and up to $117,468 per day per violation for each violation occurring after November 2, 2015. *See* 40 C.F.R. § 19.4, tbls. 1 & 2.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States of America respectfully requests that this Court:

1.    Permanently enjoin the Defendants from operating the Facility except in accordance with the Act and any applicable regulatory requirements;

2.    Order the Defendants to comply with the requirements of the NY SIP, including applying for appropriate permits and installing appropriate pollution controls;

3.    Order the Defendants to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the NY SIP;

4.    Order the Defendants to apply for, obtain, and comply with a Title V operating permit, as required by the Title V provisions of the Act;

5.    Assess a civil penalty against the Defendants of up to $37,500 per day

for each violation occurring after January 12, 2009, through November 2, 2015, and up to $117,468 per day per violation for each violation occurring after November 2, 2015;

6.    Award the United States its costs and disbursements in this action; and

7.    Grant such other relief as this Court deems appropriate.

Respectfully submitted,

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice


Dated:   July 13, 2023                         *s/ Rachel Evans King*
RACHEL EVANS KING
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-5471
Rachel.King@usdoj.gov

CARLA B. FREEDMAN
United States Attorney
Northern District of New York

Dated: <u>July 13, 2023</u>   <u>*s/ John D. Hoggan*</u>
JOHN D. HOGGAN
Assistant United States Attorney
Northern District of New York
U.S. Department of Justice

OF COUNSEL:
AMANDA M. PRENTICE
Assistant Regional Counsel
U.S. Environmental Protection Agency
290 Broadway
New York, NY 10007
(212) 637-3209

## <u>CERTIFICATION UNDER LOCAL CIVIL RULE 11.2</u>

In accordance with 28 U.S.C. § 1746, I certify that the matter in controversy in the

foregoing Complaint is not the subject of any other action pending in any court, or

any pending arbitration or administrative proceeding.

<u>*s/ Rachel Evans King*</u>
RACHEL EVANS KING
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 514-5471
Rachel.King@usdoj.gov