**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────────

UNITED STATES OF AMERICA,

                    Plaintiff,

v.                                                                3:23-cv-00847 (AMN/ML)

UPSTATE SHREDDING, LLC and WEITSMAN
SHREDDING, LLC,

                    Defendants.
───────────────────────────────────

**APPEARANCES:**                                        **OF COUNSEL:**

**U.S. DEPARTMENT OF JUSTICE**                **JOHN D. HOGGAN, ESQ.**
445 Broadway, Room 218
James T. Foley Courthouse
Albany, NY 12207-2924
*Attorneys for Plaintiff*

**U.S. DEPARTMENT OF JUSTICE**                **RACHEL E. KING, ESQ.**
Environmental Enforcement Section
Environment and Natural Resources Division
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
*Attorneys for Plaintiff*

**HANCOCK ESTABROOK, LLP**                **DOREEN A SIMMONS, ESQ.**
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202
*Attorneys for Defendants Upstate Shredding, LLC,*
*and Weitsman Shredding, LLC*

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.        INTRODUCTION

Plaintiff United States, on behalf of the Environmental Protection Agency ("EPA"), filed

a complaint against Defendants Upstate Shredding, LLC and Weitsman Shredding, LLC

("Defendants") on July 13, 2023, alleging violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq*. (the "CAA"), and New York State implementing regulation, 6 N.Y.C.R.R. § 200 *et seq*., based on airborne pollutant emissions from a facility Defendants own and operate.  Dkt. No. 1 (the "Complaint").  The same day, Plaintiff filed a proposed consent decree signed by the parties as of June 15, 2023 (the "PCD"), resolving the issues presented in the complaint.  Dkt. Nos. 2, 2-1.  On September 1, 2023, the parties jointly moved to enter the PCD, Dkt. Nos. 8, 8-1 (the "Motion"), and counsel for Defendants later filed a declaration in support of the Motion, Dkt. No. 9.

## II.        THE PROPOSED CONSENT DECREE

The PCD provides that Defendants will pay a civil penalty of $400,000 within 60 days of entry of the PCD, and implement an emissions capture and control system to comply with federal and state regulations.  *See* Dkt. No. 2-1.  Defendants agree to begin their efforts by September 2025, and to be in full compliance by April 2026.  Defendants also agree to obtain a state permit as required by federal and state regulations, which process Defendants aver is underway.  Dkt. No. 9 at ¶ 6.  Finally, the parties agree that they will bear their own costs of the litigation, but Plaintiff is entitled to costs associated with collecting any penalties not paid by Defendants.  Dkt. No. 2-1 at ¶ 73.

Public notice of the PCD was published in the Federal Register for a 30-day notice period on July 21, 2023, as required by 28 C.F.R. § 50.7.  Dkt. No. 8-1 at 12.  The EPA received one public comment in response to the notice which stated, in part, that the fine was less than Defendants' gains from noncompliance and too little for an individual identified as the owner of Defendants, and that instead a fine at least 10-times higher should be instituted and the money spent on cleaning up the damage caused by the ongoing violation.  *Id*.

## III.      STANDARD OF REVIEW

"Approval of a proposed consent decree falls squarely within a court's discretion and should be considered in light of the strong policy of encouraging voluntary settlement of litigation." *United States v. E.I. DuPont De Nemours & Co.*, No. 13-CV-810S, 2014 WL 3548965, at *1 (W.D.N.Y. July 17, 2014) (citing *United States v. Hooker Chems. & Plastics Corp.*, 776 F.2d 410, 411 (2d Cir. 1985)).  Initially, a district court must be satisfied that the decree (1) "springs from and serves to resolve a dispute within the court's subject-matter jurisdiction;" (2) "comes within the general scope of the case made by the pleadings;" and (3) "furthers the objectives of the law upon which the complaint was based." *Kozlowski v. Coughlin*, 871 F.2d 241, 244-45 (2d Cir. 1989) (quoting *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986)); *accord Cronin v. Browner*, 898 F. Supp. 1052, 1064 (S.D.N.Y. 1995) (applying *Kozlowski* to an EPA CAA case).  In making this determination, a district court must "assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." *E.I. DuPont*, 2014 WL 3548965, at *1 (quotation omitted).  Further, "in the environmental context, a court must satisfy itself that the settlement is reasonable, fair, and consistent with the purposes of the statutes under which the case was brought." *Id.* (citing *United States v. Alliedsignal, Inc.*, 62 F. Supp. 2d 713, 719 (N.D.N.Y. 1999)).  Indeed, accepting "a settlement agreement is especially appropriate where a consent decree has been negotiated by the Department of Justice on behalf of … [the] EPA which enjoys substantial expertise in the environmental field." *Id.* (quoting *United States v. City of New York*, 30 F. Supp. 2d 325, 331 (E.D.N.Y. 1998)).

## IV.      DISCUSSION

This Court finds that the parties' settlement as reflected in the PCD is procedurally and substantively fair, reasonable, and consistent with the purposes of the CAA.

First, the PCD is the result of a fair procedure. In determining procedural fairness, courts consider factors including "whether negotiation was adversarial and conducted at arms-length; whether the counsel was skilled; whether extensive formal discovery or other information-sharing procedures provided the parties with adequate information." *55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.*, 332 F. Supp. 2d 525, 530 (E.D.N.Y. 2004) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)). Here, Plaintiff argues that the PCD is the result of "good-faith, arms-length negotiation between" the parties following the EPA's investigation, and the parties used counsel with relevant experience. *See* Dkt. No. 8-1 at 9. The Court sees no indication to the contrary, and as such this showing satisfies the requirements that the PCD be procedurally fair. *See, e.g.*, *United States v. Bouchard Transp. Co.*, No. 08-CV-4490 (NGG), 2011 WL 13299921, at *4 (E.D.N.Y. Mar. 18, 2011) (approving settlement under the Clean Water Act).

Second, the terms of the PCD are consistent with substantive fairness. To be substantively fair, consent decree terms must ensure that a party bears the cost of the harm for which it is legally responsible. *See Cannons*, 899 F.2d at 87 (noting inclusion of the "concepts of corrective justice and accountability"); *accord 55 Motor Ave.*, 332 F. Supp. 2d at 530. However, "it is not the duty of the court to determine whether 'the settlement is one which the court itself might have fashioned, or considers ideal.'" *United States v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005) (quoting *Cannons*, 899 F.2d at 84). Here, Plaintiff argues that the PCD is substantively fair due to the monetary penalty and injunctive relief, which place the costs of past noncompliance and future compliance on Defendants. *See* Dkt. No. 8-1 at 9. The Court agrees. Defendants will pay a monetary penalty for their past noncompliance and will incur significant costs to prevent and monitor future compliance markedly above regulatory minimums. *See United States v. State of Or.*, 913 F.2d 576, 581 (9th Cir. 1990) ("The court need only be satisfied that the decree represents

a reasonable factual and legal determination.") (quotation omitted).  Further, it is clear that Plaintiff considered the sole public comment critical of the monetary penalty in the PCD.  In response to that comment, Plaintiff argues that the EPA cannot direct the allocation of fines, and that the parties used the factors in Sec. 113(e) of the CAA to arrive at the penalties.  Dkt. No. 8-1 at 13-15.  Indeed, the penalty must be reasonable with respect to the relevant Defendants, not with respect to executives or directors of the Defendants.  *See id*. at 13.  Finally, the Court notes that the monetary penalty is in addition to approximately $7 million in compliance costs Defendants anticipate, *see* Dkt. No. 9 at ¶ 7, and courts have found that a PCD's "relatively modest civil penalty assessment [can be] counterbalanced by its injunctive provisions."  *United States v. Kerr-McGee Corp.*, No. 07-CV-01034-EWN-KMT, 2008 WL 863975, at *9 (D. Colo. Mar. 26, 2008) (citation omitted).

Third, the PCD is reasonable.  To determine whether an environmental consent decree is reasonable, courts consider factors including its effectiveness in cleansing the environment, compensation to the public for actual and anticipated remedial measures, and the relative strength of the parties' litigation positions.  *Cannons*, 899 F.2d at 89-90.  Here, Plaintiff argues that the PCD is reasonable because it ends the violation with higher-than-required emissions limits, and provides compensation to the public.  Dkt. No. 8-1. at 10.  Specifically, to arrive at the monetary penalty, the parties considered the CAA and EPA penalty factors, the duration and gravity of the violation, litigation risk, and other factors.  *Id*. at 11-15.  Notably, the PCD and the resulting resolution of this case without protracted litigation ensures that the parties' efforts are focused on compliance and remedial efforts can begin without waiting for an uncertain litigation outcome.  Additionally, although the PCD does not require full compliance for approximately two and a half years, Defendants have already taken initial steps to comply with the PCD and will ultimately exceed the regulatory minimum emissions standards before the final compliance date.  *See id*. at

10 (describing Defendants' compliance to reach 90% emissions reduction, compared to the 81% reduction required by the CAA).

Finally, the PCD is consistent with the CAA in that it will protect and improve public air quality. *See id*. at 11. The CAA was enacted "to address the increasingly grave threat of air pollution to the environment, public health and the general welfare of the nation." *State of Vt. v. Thomas*, 850 F.2d 99, 100 (2d Cir. 1988). To accomplish this goal, Congress included Title V of the CAA, which "establishes an operating permit program for certain sources of hazardous air pollutants," which includes Defendants' facility. *E.I. DuPont*, 2014 WL 3548965, at *2 (citing 42 U.S.C. § 7661); *see* Dkt. No. 8-1 at 6 (noting that Defendants "failed to obtain a Title V permit as required by the Clean Air Act and" state law). The Court is satisfied that the greater-than-required reduction in harmful emissions which will be achieved by the PCD satisfies this consideration. *See, e.g.*, *New York v. Mirant New York, Inc.*, 300 B.R. 174, 182 (S.D.N.Y. 2003) ("controls implemented pursuant to the Consent Decree would significantly reduce the emissions … from the [] Plant, furthering Congress's intent in the Clean Air Act to improve air quality and protect the environment").[1]

## V.      CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Motion for Entry of the Consent Decree, Dkt. No. 8, is **GRANTED** and the Consent Decree, Dkt. No. 2-1, is **APPROVED and ORDERED** by this Court; and the Court further

---

[1] For the above reasons, the Court finds that the PCD (1) arises from and resolves a dispute over which the Court has subject matter jurisdiction, (2) falls within the scope of the Complaint, and (3) furthers the objectives of the CAA. *See Kozlowski*, 871 F.2d at 244; *accord E.I. DuPont*, 2014 WL 3548965, at *2-3 (applying the CAA); *Mirant New York*, 300 B.R. at 182 (same).

**ORDERS** that a copy of the Consent Decree signed by the undersigned shall be filed along with this order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules and close the case.

**IT IS SO ORDERED.**

Dated: <u>October 27, 2023</u>
      Albany, New York

Anne M. Nardacci
U.S. District Judge